May it please the Court, Your Honor, my name is Robert Lester. I'm an assistant U.S. attorney, and I represent the defendants who are appellees in this case. Mr. Uplinger was a prisoner in the federal system in 2001. Shortly after the DNA Analysis Backlog Elimination Act of 2000 was passed, he was among the first to file a lawsuit to challenge his constitutionality. Since then, a number of things have happened. First of all, this Court in U.S. v. Kincaid and this Court in U.S. v. Huggs affirmed the, decided that the statute is constitutional based on Fourth Amendment and Fifth Amendment challenges. The second thing happened is that Mr. Uplinger was released from federal prison in March of this year. A third thing happened, and that is that Mr. Uplinger, as he acknowledges in his opening brief, did in fact have a DNA test pursuant to the act. This occurred about a year or so after he was released. He's not here today because he's in jail. He's not here today because he was, as I understand it, he was arrested last week by local authorities for possession of methamphetamine, something like that, and so he is now awaiting some arraignment or further arraignment in county jail. That is at least one reason why he's not here today. A second reason, which I acknowledge is a little more speculative, is this Court, I think actually it was a prior panel, appointed pro bono counsel for him for this appeal, a lawyer out of New York, but the lawyer out of New York had to ultimately move to withdraw because the, he couldn't get Mr. Uplinger to communicate with him to cooperate so he could write a meaningful supplemental appellate brief. So I think there's at least grounds to believe that Mr. Uplinger may not be, may not have intended to vigorously pursue this appeal, let us say. We'll submit the matter and he's probably working on his next appeal. Thank you. All right, now we'll call the first matter, U.S. versus Michael D'Anthony Davis. Good morning, Your Honors, and may it please the Court, I'm Elizabeth Newman, representing Mr. Davis. Your Honors, nothing here shows that Mr. Davis was still on probation on the day of the offense charged in count one of the indictment. That was June 18th, 2002. Whether he should get two points for having been on probation that day was fully litigated, but the government still didn't meet its burden. So we would ask that the Court remand on that issue for a full resentencing hearing. In the alternative, we would ask that the Court remand for an ameline proceeding under ameline, but we do wish that the Court would remand for a full resentencing based on this issue in addition. What was the evidence that he was on probation? There was no evidence that he was on probation at that point, Your Honor. What the government – what the pre-sentence report reported was that more than two years earlier, he had been sentenced to juvenile probation. That was on March 22nd, 2000, and that 11 months before the offense charged in count one, a bench warrant had issued for a probation violation on that juvenile offense, and that eight months before the offense charged in count one, a second bench warrant had issued for a probation violation in that offense. But as to the stretch between the second bench warrant, October 15th, 2001, and the first offense charged in the indictment, June 18th, 2002, the record is absolutely empty. And there was no evidence as to how long the probation was to last? No, Your Honor. There was no evidence submitted as to that whatsoever. Well, it's not unusual for probation for a juvenile offender to last for the duration of – until he reaches age of majority. Is there a reason why it's not appropriate for the Court to infer that? Yes, Your Honor, because there's nothing in the record that indicates that that was, in fact, the term of probation in post. The Court has several times in its case law stated that the district court needs more than a conclusory statement by a probation officer in order to find a fact and base a sentence on it. For example, in the Becerra case, Your Honor, the probation officer attributed to the defendant, or to one of the defendants in that case, Jose Becerra, 25 kilos of drugs as reasonably foreseeable to him in the course of the conspiracy. The government had actually proved that two kilos were reasonably foreseeable to him, and I gather that that wasn't very much disputed. But based on no supporting evidence whatsoever of any type, not lab reports or witness statements or testimony or any kind of documentation whatsoever, the probation report simply asserted that all 25 kilos in the conspiracy should be attributable to this defendant. Well, that's a little different in this situation. That was always my understanding that when a juvenile was placed on probation, that, well, depending on the age of the juvenile, depending on the age, he started out on probation when he was 8 years old. Isn't this the same guy? No, Your Honor. That's another fellow. I'm sorry. I'm sorry, Your Honor. No. This particular man, Mr. Davis, was placed on probation at the age of 17. Age of 17? Yes, Your Honor. Yes. And the age of majority would be what? 18. 18. And what was his age when he was arrested? In this case, Your Honor? Yes. He was 19. 19. He was sentenced when he was 20. He was sentenced when he was 20? Yes. Yes, but there's no... So the probation officer said he searched all of the records and wasn't able to find any document that showed that he'd been relieved of probation. Well, Your Honor, that brings us to the point about whose burden it is to show that Mr. Davis actually had been on probation at that time. The government argued in its briefing that it was our burden to show that he hadn't been, but that misconstrues this Court's case law. The Court was very clear in the Kemp case that when the government is trying to get the district court to sentence a defendant based on a higher criminal history category, the government has the burden of showing that the defendant actually belongs in that category. And the government, therefore, has the burden of showing that Mr. Davis belonged in Category 2 as opposed to Category 1. And so whether there was evidence to support it or not, it's the government's burden to bring that forth to the Court and not — and it's not the Court's — the Court isn't permitted to rely on an empty assertion without any kind of documentary evidence whatsoever. I mean, the probation officer found that he'd been placed on probation and that there had been bench warrants. It was also the government's burden to bring something to the Court to show that in that gap of time and earlier, Mr. — Mr. Davis had actually been on probation and that his probation had actually continued — excuse me — until the day of the first offense charged in the indictment. And the government did nothing — nothing to do that. It simply asserted that it was so. But the Court's case law is clear. And I mentioned the Becerra case for another reason, Your Honor, and that's because there was a full factual inquiry in that case, and the government failed in its proof, as this Court found. And what this Court did was remand for resentencing, but in a particular way. It said that the government was not allowed to present any further evidence in front of the district court, that the district court must simply resentence that defendant in that case based on the two kilos that everybody agreed were attributable to him. And — You know, here, we also have a situation where — where he had still had, what, two outstanding probation violations on his juvenile probation, and it seemed unusual that he'd be discharged from probation because there were two warrants out there for him. It might — it was still the government's burden, though, to show by some eight months after that second warrant issued. They still had that burden to show it, and they never met that burden. And it's for that reason, since there was a full factual inquiry below, it's for that reason that we would ask for a full resentencing with the government limited to the evidence it has already presented. There's no reason that the government should get a second bite of the apple in this case. The Becerra case stands for that. Before you get to the remedy you're seeking, I think you need to — to go back to the core point, which is what's wrong with an inference by the district court based on the fact that he had been on probation and had been arrested eight months before for a violation of the probation? Why should the court presume that probation has ended? Because the court's not allowed to make a presumption in that way. Why not? You can draw an inference. If you tell me that you were on probation yesterday, it's not an unreasonable inference for me to believe that you're on probation today, too. Now, it may have ended, but it probably hasn't. Well, eight months is not yesterday. But what's wrong with an inference from the facts that are before the district court and are apparently not disputed? The facts that are before the district court, Your Honor, show that there was a warrant issue for a probation violation, but it doesn't actually show that Mr. Davis was even still on probation eight months before this offense, certainly in the sentencing in the supervised release context. The government is not required to demonstrate affirmative proof beyond a reasonable doubt like you're convicting somebody. If you have information that somebody's on probation at a given point in time, there is a period of time afterwards where I don't think it's unreasonable for a court to presume that the probation probably continues. And the defendant has an opportunity to come in and disprove or rebut the inference, but I don't believe the defendant presented anything here. So what we have is a pretty barren record. What's wrong with the inference from the little bit of facts that the court does have? The inference, what's wrong with the inference based on the little bit of facts that the court does have is that the court never, never made that inference based on what was actually, what let me back up. What's wrong with the inference that the court made based on the little bit of evidence is that the little bit of evidence isn't enough to support an inference about what the status was eight months later. It's true that the district court said that he understood certain things about how the State system works based on his prior experience as a superior court judge. But he never said that he understood anything about Mr. Davis' probationary status at the moment of the offense based on that knowledge. He said he knew that HOP meant home on probation, that that had been the sentence. And he said you don't get a bench warrant on a probation violation unless you're on probation. But he never made that little leap, that eight-month gap, Your Honors, to say that, therefore, he understood, and he was satisfied, and that this Court should be satisfied, that there was a fair inference from a gap of eight months that Mr. Davis was still on probation at that moment. And when these bank robberies were committed, he was beyond the age of majority, huh? Yes, he was, Your Honor. Okay. All right. Thank you, Your Honor. Sure. I see I have a few moments left for rebuttal. Excuse me. You've got three seconds. That's all that S.C. needed to win. May it please the Court, Your Honor. Sherry Pim for the United States in this matter. With respect to the criminal history issue, the government does contend that the court below did not clearly err in finding that the preponderance of the evidence showed that the defendant was still on probation in this matter. Can I ask you a question? It's not very hard to find out whether someone's on probation or not. I mean, a phone call. A phone call to his State probation officer. Well, I think or why wasn't that done? Well, I think the probation officer here did do that, Your Honor. And it may not be spelled out as well in the pre-sentence report and the addendum to the pre-sentence report as might be ideal. But what the probation officer here did indicate is that the probation officer reviewed the records, the juvenile records that indicated at the time the bench warrant was issued in July of 2001, the first bench warrant, the defendant's probation had not been revoked at that time. And that, in fact, the bench warrants here were still pending at the time, in fact, that the pre-sentence report was issued in March of 2003, so well after all the bank robberies took place in this case. Well, the bench warrant, that would have been for a probation violation eight months before, wouldn't it? The probation violations, well, there were two bench warrants issued, one in July of 2001 and one in October of 2001. And it was eight months later that the string of bank robberies began. So that's when those were issued. But I don't see how it really helps to say that the those things, the violations were still pending, because that was eight months before. We're trying something that's ---- I think what's the point that I think the probation officer was trying to draw from this is that these, the probation had not been revoked as of the issuance of the bench warrants were still pending well after the bank robberies. And so that the issue with respect to ---- How does that help? Well, that the issue with respect to the probation violation that caused the issuance of the bench warrants was still a live one. The bench warrants were still pending at the time the defendant was sentenced in this case. Suppose he turned 18 along the way, and apparently he's older than 18 at the time of arrest. If a bench warrant had been issued at a time he violated probation, and then he turns 18 and assumed for the moment that's the termination of probation in the juvenile court, would that necessarily dissipate the bench warrant, or wouldn't he still be potentially arrestable for having violated probation, even though he might not be on probation any longer? I think you're right. I think that is a possibility. But that would tell us that the dependency of the bench warrant doesn't necessarily tell us that probation is still in effect. It tells that his violation of probation may still be a punishable offense. But it doesn't necessarily tell us probation is still in effect at the time he commits the act for which he's currently being sentenced. Well, I think that's right, except that here he had actually already reached the age of majority when the first bench warrant was issued. He was 18 years old when the first bench warrant was issued and 19 years old when the first bench warrant was issued. And the probation officer's review of the records indicated that when the first bench warrant was issued when he was 18 years old already, that probation had not been revoked at that time. Yes, but there's no proof of that. There's no proof that it was not revoked. And Judge Ferguson said it seems like a very easy thing, and the government's responsibility to bear the burden of proof, to show that when the act was committed, he was on probation. Well, the probation officer does indicate in the addendum and in the pre-sentence report itself that the probation officer reviewed the relevant juvenile records in this case and reviewed the database search, the standard computer inquiry. And it was from the review of all of those records that the probation officer came to the conclusion and, in fact, found that nothing in the record indicated that defendant's probation had been revoked as of the time these warrants were issued. And so at the time of the offense, we're talking about that he gets a two-level increase. I don't see how that helps. Well, I think it is a reasonable inference that the Court can draw that when the warrants are still live. Probation has not been revoked. And based on all of that, when the defendant is still 19 at the time these offenses are committed, so he's the same age, in fact, he was when the second bench warrant was issued, I think it's a reasonable inference that the Court could draw that, in fact, he was still on probation a mere eight months later when he's still 19. Well, why do you have to do all that when it can all be handled by the phone call to his probation officer? I mean, you're just making excuses for sloppy work. Is that right? Well, certainly the government could have done more here. Well, I certainly, I will. I could have spoken more with the probation officer about this. I did. But the record is as it is here. I mean, that's the case. It's plain that the federal probation officer had some kind of handle, but his report doesn't actually point to what this conclusion is based on. And that's just kind of the source of all of our frustrations, and certainly yours as well, that chances seem pretty good that there's a reliable basis for his conclusion, but that reliable basis isn't articulated. I agree. It's not articulated as well as we might like. But your office goes over these probation reports, and you know you've got the public defender on the other side, and they're watching you because that's their job, you know, to keep the system moving properly. We absolutely do know that, Your Honor, and certainly more could have been done here. I'm certainly not going to dispute that. So what would your suggestion be? If we assume for the moment that we decide, that we would decide there's not a sufficient basis in the record, defendant has argued that what we should do at this point is to close the door on that question and remand for resentencing with that no longer being on the table. What's the government's position on that issue? That, well, if the case is being remanded for resentencing, that seems like a reasonable course here. But it is, of course, the government's position that there was sufficient evidence here that the Court could find by a preponderance of the evidence and draw that inference from circumstantial evidence as the district court characterized it in this case. And then, in fact, there was no clear error in the Court doing so. Does the issue have to be off the table? I mean, since this is a factual matter as to which there is an ascertainable answer, is there a reason not to obtain the answer now? Well, certainly, if the case were remanded, that phone call that you've inquired about could be made. There's no question about that. What about that wonderful doctrine about not given, being given two bites at the apple? Well, I would just say the government making that argument quite often. Yes. I understand, Your Honor. In this case, you know, I don't have a good answer to that one way or the other. In this case, we're talking about, well, if the case is going to be remanded for resentencing, I think that phone call could be made, but certainly it would be giving the government and really the Probation Office a second opportunity to present evidence in this case. That's correct. Okay. Thank you. Your Honors, the Court has pointed out that the probation and the government counsel has pointed out that the Probation Officer did apparently review all of the records available, and I would only like to emphasize that the Probation Officer was still not able to come up with that ascertainable information, easily ascertainable information that could have decided this issue one way or another. Let me direct you to the issue that I took you away from before. Yes. Because I wanted to deal with the first part. What's the second part? You were telling us that if it would go back, it should go back with the door closed on this issue. What's the basis for that position? The Court can see that the Court in Becerra did that very thing, and in addition, the en banc court in Matthews, which I would be happy to submit a 28J letter about since we didn't actually cite it, but there's an en banc case called Matthews in which the Court laid out the general rules for what kind of remand you get when you get a remand. And what the Court said was that generally the door is not closed, but in particular cases when there's a full factual inquiry that's already occurred in the district court, and there's only a factual question, not a legal question, I mean, that the door can be closed. And the Matthews court cited the Becerra case as evidence of a time when this court had done that. And it cited two other cases as well when the court had done that. And I would argue that that is precisely what should happen in this case, that the remand should be won with the door closed. There was a full factual inquiry. The district court wasn't under any misapprehension about what law governed whether Mr. Davis should be in Category 2 or Category 1. There was a pre-sentence report, an addendum, a government pleading, two defense pleadings, a sentencing hearing. Everyone had all the opportunity that they asked for to present evidence to the district court, and the government still failed in its proof. And for that reason, the door should be shut. Alitoso, was Matthews a sentencing case? Matthews was a sentencing case. If I'm not mistaken, it was the issue was, in that case, a legal question. Whether the district court had to look at the underlying facts of prior convictions under a Taylor-modified categorical approach. We've not discussed at all the departure issue. No, Your Honor. That's because my understanding is that would be affected by an open remand for resentencing. And if the court decides against Mr. Davis on the category, criminal history category issue, then it would be subject to a remand under Ammoline. That's what we would ask the court to do. Wait a minute. I'm not sure I followed that. It seemed like they're two separate issues. There were two separate issues briefed in our briefs, Your Honor. Yeah. That was pre-Booker, of course, pre-Blakely even. Right. And one of those issues was the authority of the court to recognize a particular extraordinary circumstance and depart. Mr. Davis's extraordinary sincerity in wanting to improve his life. And the district court said that he seemed like basically the only sincere defendant the court had ever seen. But how do you tie that to the first issue about the probation? They're only tied in this way, Your Honor, that on the probation issue, we would hope that the court would grant us a full remand for full resentencing. And at the resentencing, the court would have the opportunity under Booker, the flexibility that it was not, of course, aware at the time that it did have, the discretion that it now has under Booker and Ammoline, to give a sentence based on all of the 3553a factors as well as on the what is now an advisory guideline sentence. And if we were – if we prevailed on the probation issue, that advisory guideline range would drop to 51 to 63 months, because he'd now be in Category 1. But the court would then have the discretion, more discretion, of course, than it had had at the initial sentencing hearing, to drop that number even further based on any circumstance that struck it. That seems to me to be the sensible argument, but I wasn't sure that I was getting that. Yes. I'm sorry that I wasn't as clear as I might have been. Thank you. Thank you, Your Honor. Thank you. When it goes back, when it goes back, the court isn't bound by the guidelines. No. So the court, you know, could take into consideration the fact that these two warrants were out there. Huh? It could. So then what's the point of telling the district judge that that territory is forbidden? Because even under Ameline, as I understand it, Your Honor, the advisory guideline calculations still have to be correctly made. And the advisory guideline calculations in this case would be that Mr. Davis's And that, therefore, the advisory guideline range would drop from where it was, 57 to 71, I believe, to 51 to 63. And within one set court had done that, it could, of course, look at all of the 3553a factors, including the ones that it felt were not a basis for departure before or didn't understand its authority, as I think we argued in our briefs. It could, of course, look at other things, but it could, of course, look at what Mr. Davis has done for himself and how he's improved his enforced time since the court sentenced him initially. So the court then, on resentencing, sort of recognizes the guidelines and what would indicate, well, this is the range under the guidelines, but they're just discretionary, and I'm going to exercise my discretion, and I'm going to give probation. The court could do that. We would argue that now under Booker, instead of just a guideline range or a guideline book to look at, there are now a multitude of factors to look at, the 3553a factors, of which the advisory guideline range is one. Okay. Life gets complicated. Thank you. It does, indeed. Thank you, Your Honor. The matter will stand submitted.
judges: Hug, Pregerson, Clifton